UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                        Case No. 1:21-cr-20561

v.                                         Honorable Thomas L. Ludington
                                              United States District Judge
DANIEL ABRAHAM and ANDREA
SANDERS,

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS**

In May 2020, Daniel Abraham was released on parole and began living with his then-girlfriend, Andrea Sanders. As a condition of Abraham's release from custody and parole, he agreed to suspicionless searches of his person and property at any time.

On the evening of March 10, 2021, police officers went to Abraham and Sanders's house to conduct a parole-compliance check, but neither was home. However, there to babysit her grandson, Sanders's mother consented to a search. Based on drugs, money, and paraphernalia the officers found in Abraham and Sanders's shared bedroom, the couple was indicted for conspiracy to distribute and to possess with intent to distribute controlled substances, 21 U.S.C. §§ 841(a)(1), 846, and possession with intent to distribute controlled substances or aiding and abetting, *id.* § 841(a)(1); 18 U.S.C. § 2. ECF No. 3.

Abraham and Sanders have both filed motions to suppress the drugs, money, and paraphernalia, challenging the legality of the Government's search, arguing there was no consent for the warrantless search.

The questions before this Court are whether the Fourth Amendment permits a suspicionless search of a parolee's house subject to a parole agreement and whether a babysitter has authority to

consent to a warrantless search if she is the only adult present and has control over common areas of the house.

I.

The following facts represent this Court's findings based on the witnesses' testimony, demeanor, qualifications, and credibility at a bench hearing. *See United States v. Mandycz*, 359 F. Supp. 2d 601, 603 (E.D. Mich. 2005) (citation omitted).

In May 2020, Defendant Daniel Abraham was released on parole to live with his then-girlfriend, Defendant Andrea Sanders. *See* ECF No. 47 at PageID.152; Pl.'s Hr'g Ex. 1. As part of the parole agreement that he signed, Abraham "voluntarily consent[ed]" to the search of his person and property "upon demand by a peace officer or parole officer." *Id.*

On March 10, 2021, officers performed a "nighthawk" parole-compliance check at Defendants' house. The only adult in the house was Catina Campbell—Sanders's mother— who was there babysitting Sanders's son. Campbell let the officers in and then took them to the Defendants' bedroom.

While searching the room, the officers zipped open a "Luv Betsey"[1] duffle bag, which they found stuffed with $34,045 in cash, 1,113 grams of cocaine, 210 grams of heroin/fentanyl, 80 grams of crack, 40 bars of Alprazolam, and 10 suboxone packets containing suboxone strips, plus some paraphernalia. ECF No. 39 at PageID.111. They also found $466 in a dresser. *Id.*

On August 31, 2022, Abraham filed a motion to suppress the drugs, money, and paraphernalia, asserting that the officers had "no warrant for the search" and violated Michigan's

---

[1] "Luv Betsey" is Betsey Johnson's fashion line of "flirty designs and lightweight materials [that] are perfect for the girl who likes to add a little personality to her style." *Luv Betsey*, 6PM (2022), https://www.6pm.com/b/luv-betsey/brand/4354 [https://perma.cc/9JX9-ADSX].

administrative rule[2] for warrantless searches of parolees. ECF No. 35 at PageID.94.

After concurring with Abraham's motion, *see* ECF No. 42, Sanders filed her own motion to suppress, similarly arguing that the search violated the Fourth Amendment and the officers did not obtain valid consent from her mother. ECF No. 47 at PageID.152–56.

The Government contends that Sanders's mother gave valid consent and that the Fourth Amendment does not prohibit a suspicionless search of a parolee's house according to a parole agreement. *See generally* ECF Nos. 39; 48.

## II.

The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). However, there are several exceptions to the warrant requirement under which a warrantless search may be reasonable. *Riley v. California*, 573 U.S. 373 (2014) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

## A.

The search of Defendant Abraham's residence satisfies the Fourth Amendment under the "totality of the circumstances" approach articulated in *Samson v. California*, 547 U.S. 843 (2006).

In *Samson*, the Supreme Court held that "[t]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Id.* at 843. Based on the "totality of the circumstances," the Court determined the search was reasonable under the Fourth Amendment. *Id.* at 2197 (quoting *United States v. Knights*, 534 U.S. 112, 118 (2001).

---

[2] Michigan permits a warrantless search of a parolee's person or property in four circumstances, the most relevant of which is "[w]ith the consent of the parolee or a third party having mutual control over the property to be searched." MICH. ADMIN. CODE R 791.7735(1) (2022).

In analyzing the totality of the circumstances, the court balances "the degree to which [the search] intrudes upon an individual's privacy" with "the degree to which [the search] is needed for the promotion of legitimate governmental interests." *Knights*, 534 U.S. at 118–19. Relevant factors include "(1) a person's position on the continuum of criminal punishments; (2) the terms of the search condition communicated to the person; and (3) the State's interest in supervision." *United States v. Sharp*, 40 F.4th 749, 753 (6th Cir. 2022).

Abraham was on parole, which "severely diminished" his expectation of privacy. *Samson*, 547 U.S. at 844; *see also Morrissey v. Brewer*, 408 U.S. 471, 477 ("Rather than being an ad hoc exercise of clemency, parole is an established variation on imprisonment of convicted criminals."). Importantly, as a condition of his parole, he signed an agreement permitting searches of his person and property at any time. As Special condition 4.2 of his parole agreement states,

> Written consent to search the parolee's person and/or property, MCL 791.236(19): I voluntarily consent to a search of my person and property upon demand by a peace officer or parole officer. If I do not sign this written consent, I understand that my parole may be rescinded or revoked.

Pl.'s Hr'g Ex. 1. Abraham penned his signature right below this language, and his parole officer testified that the condition was clearly communicated to him. *See Samson*, 547 U.S. at 852 (holding that a defendant's acceptance of a "clear and unambiguous search condition" severely diminished his reasonable expectation of privacy). And finally, the Government had an interest in supervising him to prevent recidivism and to curtail crime, outweighing his privacy interest. *See id.* at 854 (holding that a state's "ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism").

Based on the totality of these circumstances, the "nighthawk" compliance search was reasonable and therefore did not violate Abraham's Fourth Amendment rights. Accordingly, Defendant Abraham's Motion to Suppress will be denied.

**B.**

The search was also valid considering Campbell's consent.

A warrantless search is permissible under the Fourth Amendment if the officers obtain valid consent from someone who has common authority over or a sufficient relationship to the premises to be searched. *United States v. Morgan*, 435 F.3d 660, 663 (6th Cir. 2006) (quoting *United States v. Matlock*, 415 U.S. 164, 171 (1974)). The parties do not dispute that Campbell consented to the search. *See generally* ECF Nos. 35; 39; 47;48. Indeed, Campbell testified that she welcomed the officers into the house.

The parties' principal dispute is whether Campbell had the *authority* to consent to a warrantless search of Abraham and Sanders's bedroom.

Although a babysitter does not always have authority to consent to a search, under these circumstances, Campbell had authority to consent. Campbell was in the house to care for Sanders's son. As the only adult responsible for the minor child in the home, Campbell had control over the common areas of the house. And more than just *any* babysitter, this one is Sanders' mother, a regular presence in the house. *Compare United States v. Ridley*, 639 F. Supp. 2d 1235 (D. Kan. 2009) (finding that defendant's babysitting mother-in-law had authority to consent where she was "the only responsible adult" caring for children and had broader control over the premises than an unrelated babysitter), *with United States v. Corral*, 339 F. Supp. 2d 781 (W.D. Tex. 2004) (finding that part-time housekeeper who represented she was "in charge of" minor child and spoke limited English did not have sufficient joint control over the premises to consent to a warrantless search); *see also United States v. Thomas*, 120 F.3d 564 (5th Cir. 1997) (holding that babysitter had apparent authority to consent to search because her duties required right to access common areas and bedrooms).

Because Campbell had and exercised her authority to consent to the search, the search did not violate Defendants' Fourth Amendment rights. So both motions will be denied.

**III.**

Accordingly, it is **ORDERED** that Defendant Abraham's Motions to Suppress Evidence, ECF No. 35, is **DENIED**.

Further, it is **ORDERED** that Defendant Sanders' Motion to Suppress Evidence, ECF No. 47, is **DENIED**.

Dated: December 1, 2022                     s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge